**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CARA L. HICKS,**

      **Plaintiff,**

  v.

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

Case No. 2:14-cv-2418
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

**REPORT AND RECOMMENDATION**

Plaintiff, Cara L. Hicks, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 12) the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 7). Plaintiff did not file a Reply in this matter. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her application for benefits on November 14, 2011, alleging that she has been disabled since July 1, 2011. (R. at 36.) Plaintiff alleges disability from degenerative disk disease, sciatica with dysesthetic pain, osteoarthritis, fibromyalgia, depression, and anxiety. (R. at 91.) Plaintiff's application was denied initially and upon reconsideration. (R. at 91-100, 102-116.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 123.)

Administrative Law Judge Neil Sullivan ("ALJ") held a hearing on April 22, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 57-90.) On August 29,

1

2013, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 36-48.)  On October 6, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-7.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

## II.  THE ADMINISTRATIVE HEARING

Vocational Expert George Coleman III (the "VE") testified at the administrative hearing.  He identified Plaintiff's past relevant work as licensed practical nurse, health services coordinator, and medical reviewer.  (R. at 83-84.)  The ALJ asked the VE whether a hypothetical person with Plaintiff's age, education, work experience, and limitations that would eventually become the ALJ's residual functional capacity determination could perform any of Plaintiff's past work.  (R. at 85-86.)   The VE responded that the hypothetical person could not, but indicated that jobs exist in the local or national economies that the hypothetical person could perform.  (R. at 86.)  According to the VE, these jobs include table worker, telephone information clerk, and address clerk.  (R. at 86.)

## III.  MEDICAL RECORDS

**A.  Christian Bonasso, M.D.**

Dr. Bonasso treated Plaintiff over the course of approximately three years and conducted three operations on Plaintiff's spine.  On July 12, 2011 Dr. Bonasso opined in a letter to one of Plaintiff's other doctors that he "[does] not think she will be able to tolerate" continued work as a floor nurse following spinal fusion surgery.  (R. at 428.)  On September 27, 2011 he stated in another letter that he "urged her to consider disability from this sort of work or any other work that involves physical activity, long periods of sitting, etc."  (R. at 431.)  On January 22, 2012, following one of Plaintiff's spinal fusion surgeries, Dr. Bonasso noted Plaintiff was

2

having problems with pain management, but that Lyrica had given her some relief. (R. at 524.) On April 5, 2012 Dr. Bonasso stated that Plaintiff "is plagued by chronic pain and she can easily aggravate her situation by simply sitting for to [*sic*] long or being on her feet for to [*sic*] long." (R. at 536.) Dr. Bonasso opined, "It is not possible for her to maintain employment on an ongoing basis because of her need to constantly change position and the inability to bend, lift, or sit for any significant period of time." (*Id.*) On April 21, 2013 Dr. Bonasso recommended that Plaintiff undergo a third spinal fusion procedure. (R. at 682.)

**B. Alisia A. Mitchell, C.N.P.**

In the spring of 2012 Plaintiff saw CNP Mitchell and reported "left arm pain, neck pain, low back pain, right hip pain, leg pain, and foot pain." (R. at 544.) CNP Mitchell recorded Plaintiff's pain management plan and reported that Plaintiff reported ongoing neck and back pain, as well as numbness in her left hand and lower body. (R. at 544-549.) On May 23, 2012 Plaintiff told CNP Mitchell that she was able to be out in her yard with her dog. (R. at 547.) Plaintiff continued to report the pain and numbness in August of 2012 and stated that "she often has to take breaks while even doing such simple chores as washing dishes." (R. at 642-643.) On October 23, 2012 CNP Mitchell recorded Plaintiff's statements regarding her ongoing pain.

> The patient states that she has been feeling pretty bad over the course of time since her last office visit. She is having pain from her neck down into the left arm and also at the right side of the head. In addition, she feels a sensation like a pressure being placed on the back of her neck, somewhat like a "hooded sweatshirt," but it is an uncomfortable type of pressure. And she is experiencing a sound, "like broken glass sometimes" when turning her head. Also, when she leans forward and looks to the left, she can at times feel a sickening throbbing in the middle of her upper back and that is accompanied by sharp stabbing sensations that almost seem to keep a "pulse or rhythm of her pulse." . . . She is also having muscle spasms, and has since her first surgery, but they seem to have worsened over time.

(R. at 644.)  CNP Mitchell reported that Plaintiff had "limited range of motion of the cervical region secondary to pain." (R. at 645.) According to CNP Mitchell, Plaintiff also had "decreased sensation in the left upper extremity." (*Id.*) On February 19, 2013 CNP Mitchell recorded Plaintiff's continued complaints of neck, back, and head pain, muscle cramps and spasms, and numbness, tingling, and burning on her left side.  (R. at 653.)  Plaintiff also reported muscle pain and stated that a "light touch will 'send me over the moon.'" (*Id.*)

## C.  Phillip Swedberg, M.D.

On July 16, 2013 Dr. Swedberg conducted an orthopedic examination of Plaintiff. Dr. Swedberg reported normal manual muscle testing findings with respect to Plaintiff's shoulders, elbows, wrists, fingers, hips, knees, and feet.  (R. at 685.)  Dr. Swedberg also found that Plaintiff had normal grasp, manipulation, pinch, and fine coordination functioning.  (*Id.*) He reported reduced range of motion in Plaintiff's cervical spine, shoulder, and dorsolumbar spine, but noted normal range of motion in Plaintiff's elbow, wrist, hands, fingers, hips, knees, and ankles.  (R. at 686-688.)  Dr. Swedberg opined that Plaintiff could sit for twenty minutes at a time for a total of four hours, stand for fifteen minutes at a time for a total of three hours, and walk for ten minutes at a time for a total of one hour per day.  (R. at 690.)   Dr. Swedberg also concluded that Plaintiff could never reach overhead, climb stairs and ramps, balance, kneel, crouch, or crawl, and only occasionally stoop, push, or pull.  (R. at 691-692.)  Additionally, Dr. Swedberg opined that Plaintiff could never tolerate humidity, wetness, dust, extreme heat, extreme cold, or vibrations or move mechanical parts." (R. at 693.) Dr. Swedberg observed, "There is no evidence of muscle atrophy or weakness. The . . . grasp strength and manipulative ability are well-preserved bilaterally." (R. at 697.) He concluded, "the patient appears capable of performing only a mild amount of ambulating, standing, bending, kneeling, pushing, pulling,

4

lifting and carrying heavy objects. In addition, the patient has difficulty reaching overhead, but has no difficulty sitting, grasping, and handling objects." (*Id*.)

## IV. THE ADMINISTRATIVE DECISION

On August 29, 2013, the ALJ issued his decision. (R. at 36.) The ALJ found that Plaintiff met the insured status requirements through December 31, 2015. (R. at 38.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of July 1, 2011. (*Id*.)

The ALJ found that Plaintiff had the severe impairments of "disorders of the back (status-post spinal fusion operations), fibromyalgia, osteoarthritis, anxiety, depression, hyperlipidemia, bipolar disorder, dysthymic disorder, a panic disorder, sleep apnea, insomnia, myofascial pain disorder, and obesity." (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 39.) At step four of the

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

sequential evaluation process, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> Sedentary work, as defined in 20 CFR 404.1567(a), except that she should never climb ladders, ropes or scaffolds, and can only occasionally climb ramps or stairs. In addition, the claimant can only occasionally stoop, kneel, crouch or crawl. The claimant is also limited to occasional bilateral overhead reaching. Furthermore, the claimant should avoid concentrated exposure to extreme cold, extreme vibration, the use of hazardous machinery, operational control of moving machinery, and unprotected heights. Finally, the claimant is limited to the performance of simple, routine and repetitive tasks, in a work environment where changes occur on no more than an occasional basis, and where there is no greater than occasional interaction with coworkers or the public.

(R. at 40.) In reaching this determination, the ALJ declined to give controlling weight to Dr. Bonasso, CNP Mitchell, or Dr. Swedberg's medical source opinions. (R. at 45-46.) He determined that Dr. Bonasso's statements were "not entitled to significant weight." (R. at 45.) Specifically, the ALJ gave "little weight" to Dr. Bonasso's September 27, 2011 statement and disregarded Dr. Bonasso's April 2012 conclusion that Plaintiff is disabled. (*Id*.) The ALJ stated that he "considered the opinion offered by Ms. Mitchell and determined that it was partially credible." (R. at 46.) The ALJ ultimately gave "little weight" to CNP Michell's assessment because she is "not a recognized medical source." (*Id*.) Finally, the ALJ found Dr. Wedberg's opinion "partially credible." (*Id*.) The ALJ determined, however, that Dr. Swedberg's conclusions were incompatible with his examination results and that he proposed limitations unidentified by Plaintiff's treating sources. (*Id*.)

The ALJ determined that Plaintiff cannot perform her past work. (R. at 46.) The ALJ, relying on the VE's testimony, then determined that Plaintiff could perform the jobs of "table worker," "telephone clerk," and "address clerk," all of which VE identified as existing in

6

significant numbers in the national economy. (R. at 47-48.) The ALJ, therefore, concluded that Plaintiff is not disabled under the Social Security Act. (R. at 48.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forward five assignments of error. Plaintiff contends that the ALJ's RFC determination and the ALJ's credibility determinations with respect to Dr. Bonasso, CNP Mitchell, and Dr. Sweberg are not supported by substantial evidence in the record. (ECF No. 12 at 13, 17, 21, & 22.) Additionally, Plaintiff argues that the jobs identified by the VE are not consistent with the ALJ's RFC determination. (ECF No. 12 at 24.)

**A. Substantial Evidence supports the ALJ's Residual Functional Capacity Determination.**

In her first assignment of error, Plaintiff argues that the record lacks substantial evidence in support of the ALJ's RFC determination. (ECF No. 12 at 13.) At step four, the ALJ determined that Plaintiff retained the residual functional capacity to perform sedentary work, with several limitations, as fully set forth above. (R. at 40.)

Plaintiff states that the ALJ's RFC determination is flawed because it "contains no limitations as to reaching (except for overhead), handling, fingering, or feeling" and "no limitations as to sustained static positioning of the head and neck." (ECF No. 12 at 14.) In support of her argument Plaintiff notes that she "frequently reported neck pain . . . and hand and arm symptoms (pain, numbness, tingling) related to her cervical spine pathology." (*Id*.) Plaintiff also states that "pathology in the cervical spine" is well documented in her medical treatment files. (ECF No. 12 at 14-15.) Plaintiff contends that her cervical spine fusion implies a "severe impairment with resultant severe limitations." (ECF No. 12 at 15.) Plaintiff concludes that a finding of limitations with respect to reaching and head positioning is supported by Dr. Bonnasso and Dr. Swedberg's findings. (ECF No. 12 at 15-16.)

8

In making his RFC determination, the ALJ discussed Dr. Swedberg's 2013 functional limitation, in which Dr. Swedberg opined that Plaintiff would have limitations in overhead reaching, but not in regular reaching, handling, fingering, and feeling. (R. at 44, 691.) Dr. Swedberg also reported normal manual muscle testing results and normal range of motion in Plaintiff's elbows, wrists, hands, and fingers. (R. at 685-688.) With respect to Plaintiff's neck pain, Plaintiff does not direct the Court to any medical source opinion that sets forth the limitations that Plaintiff alleges. The record indicates observations of neck pain and some limited range of motion. (*E.g.*, R. at 645, 654, & 686.) The record does not, however, contain medical source opinions indicating limitations with respect to "sustained static positioning of the head and neck." The ALJ is not required to adopt limitations in his RFC determination that are unsupported by the medical opinion evidence. The Undersigned finds, therefore, that the ALJ's RFC determination is supported by substantial evidence in the record. Accordingly, Plaintiff's first assignment of error is without merit.

## B. The ALJ's Analysis of Dr. Bonasso's Opinion

Plaintiff contends that the ALJ failed to properly evaluate Dr. Bonasso's treating physician opinion. Specifically, Plaintiff argues that the ALJ did not properly analyze Dr. Bonasso's opinion under 20 C.F.R. § 404.1527 and that the ALJ's credibility determination is not supported by substantial evidence in the record.

### 1. ALJ's credibility analysis meets the standards set forth in 20 C.F.R. § 404.1527

According to Plaintiff, the ALJ failed to base his credibility determination on the factors set forth in 20 C.F.R. § 404.1527. (ECF No. 12 at 17.) According to Plaintiff, the ALJ did not properly consider the treating relationship or Dr. Bonasso's specialized knowledge as a spinal surgeon who performed three surgeries on Plaintiff's spine. (ECF No. 12 at 18.)

9

The regulations state that the ALJ, regardless of the weight given to a medical opinion, will evaluate the opinion based on the following factors: whether there was an examining relationship, whether the opinion was made by a treating source, the length of the treating relationship, the supportability of the opinion's conclusions, the consistency of the opinion with the record as a whole, any specialization of the opinion source, and other factors raised by Plaintiff.  20 C.F.R. § 404.1527(c).

In his written opinion, the ALJ noted that "the record does not contain consistent evidence that the claimant required the ability to frequently change positions or that she had such extreme limitations in her ability to lift or sit." (R. at 45.)  As explained below, these conclusions are supported by substantial evidence in the record, which the ALJ cites in support of his credibility determination.  (*Id*.)  The ALJ also noted that some of Dr. Bonasso's assessments were "somewhat vague as to what type of limitations the claimant actually had." (*Id*.)  The ALJ also stated that he gave little weight to Dr. Bonasso's conclusion that Plaintiff is disabled because that is a determination reserved to the Commissioner.  (*Id*.)  Furthermore, the ALJ discussed Plaintiff's operations in his analysis at step four, both in his summary of Plaintiff's medical history and in his credibility analysis. (R. at 41-45.)  The ALJ also implicitly acknowledges the length of Plaintiff's treating relationship with Dr. Bonasso when he specifically identifies treatment dates from three different years.  (R. at 45.)

Plaintiff makes much of the fact that the ALJ did not directly acknowledge Dr. Bonasso's specialty as a spinal surgeon who performed Plaintiff's surgeries.  (ECF No. 12 at 18.)  The specialization of the opinion source, however, is only one factor among many that the ALJ must consider.  20 C.F.R. § 404.1527(c).  The mere fact that the ALJ did not discuss every factor does not mean the ALJ improperly ignored any.  It is enough that the ALJ's written opinion as a

10

whole reflects a reasonable consideration of the relevant factors. *See Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.") As explained above, the ALJ discussed the § 404.1527(c) factors at length, and, as explained below, substantial evidence exists in the record to support the ALJ's findings.

### 2. ALJ's credibility determination is supported by substantial evidence

Plaintiff also argues that the ALJ's findings with respect to Dr. Bonasso's credibility as a treating physician are not supported by substantial evidence in the record. (ECF No. 12 at 18.) In particular, Plaintiff challenges three statements the ALJ made in his written opinion.

Plaintiff takes exception to the ALJ's statement that "[a]s to the functional aspects of [Dr. Bonasso's] letter, the record does not contain consistent evidence that the claimant required the ability to frequently change positions or that she had such extreme limitations in her ability to lift or sit." (R. at 45; ECF No. 12 at 18.) Plaintiff argues that CNP Mitchell and Dr. Swedberg's findings contradict the ALJ's statement. (ECF No. 12 at 18.) According to CNP Mitchell, Plaintiff must adjust her posture more than once every two hours. (R. at 677.) It is Dr. Swedberg's opinion that Plaintiff can sit for twenty minutes at a time, stand for fifteen minutes at a time, and walk for ten minutes at a time, but cannot reach overhead bilaterally or lift any weight on a frequent basis. (R. at 677.)

This Court will not second-guess the ALJ's opinion when substantial evidence exists to support it. *Rabbers*, 582 F.3d at 651. To show that the ALJ's findings are not supported by substantial evidence, therefore, it is not enough to show that substantial evidence exists in the

11

record that tends to contradict the ALJ's finding. Rather, Plaintiff must show that no substantial evidence exists that supports the challenged finding. *Blakley*, 581 F.3d at 406.

Although she did not indicate for how long, Plaintiff reported to one of her doctors that she sits in a chair to relax. (R. at 42.) Treatment notes from another doctor state that Plaintiff leads a "[s]edentary lifestyle secondary to chronic pain." (R. at 657.) Dr. Swedberg also reported that Plaintiff was "comfortable in . . . the sitting . . . position[]." (R. at 696.) Furthermore, Dr. Swedberg's own findings indicated normal muscle function and only some loss of upper body range of motion. (R. at 685-688.) The Undersigned finds, therefore, that substantial evidence in the record supports the ALJ's statement.

Plaintiff also challenges the ALJ's finding that "[t]he claimant's statements to her other doctors, as well as some of the other evidence of record, indicated that she led a relatively sedentary lifestyle that involved a considerable amount of sitting." (R. at 45; ECF No. 12 at 19.) Plaintiff concedes that the record shows she leads a "sedentary lifestyle." (ECF No. 12 at 19.) Contrary to the ALJ's interpretation that this finding implies long periods of sitting, Plaintiff urges the Court to conclude that the phrase "sedentary lifestyle" merely indicates that Plaintiff is "physically inactive due to chronic pain." (*Id*.) Plaintiff also argues that even if Plaintiff's sedentary lifestyle implies long periods of sitting, "it is not reasonable to assume that . . . she was sitting for sustained periods of time, or in a straight-backed office-type chair, as opposed to . . . a reclining, cushioned chair or couch." (*Id*.)

Defendant's Response does not cite to any particular evidence in the record. Instead, Defendant urges the Court to consider the ALJ's written decision "in its entirety." (ECF No. 19 at 11.) The ALJ's written opinion contains conflicting references to Plaintiff's ability to sit for sustained periods of time. The ALJ notes that Plaintiff's treating physicians "indicated that she

12

needed to consider herself disabled from . . . any other work that involved . . . long periods of sitting." (R. at 41.) Although she did not indicate for how long, Plaintiff reported to one of her doctors that she sits in a chair to relax. (R. at 42.) The ALJ noted that Dr. Bonasso indicated that Plaintiff must "constantly change position." (*Id*.) The ALJ, however, highlights treatment notes from another source stating that "[Plaintiff leads a] [s]edentary lifestyle secondary to chronic pain." (R. at 657.) Dr. Swedberg reported that Plaintiff was "comfortable in . . . the sitting . . . position[]." (R. at 696.)

Plaintiff's interpretation of the challenged comment is a reasonable one. The substantial evidence standard, however, does not permit the Court to overturn the ALJ's finding merely because the Court would find that the weight of the evidence favors another conclusion. It is enough that substantial evidence exists in the record to support the ALJ's finding. *Rabbers*, 582 F.3d at 651. The Undersigned finds that the record contains adequate evidence supporting the challenged conclusion. *Blakley*, 581 F.3d at 406.

Finally, Plaintiff challenges the ALJ's statement that "the weight of the treatment offered was generally conservative in nature and did not appear to prevent the claimant from engaging in activities of daily living, and to get herself to her medical appointments." (R. at 45; ECF No. 12 at 20.) Plaintiff argues that the ALJ mischaracterized Plaintiff's treatment history as "generally conservative in nature." (*Id*.) According to plaintiff, this characterization is unsupported by substantial evidence in the record and demonstrates that the ALJ's overall credibility determination is fatally flawed. (ECF No. 12 at 20.)

Before proceeding with analysis of this issue, the Undersigned notes that the ALJ's written opinion clearly enunciates several reasons why the ALJ chose not to accord Dr. Bonasso's opinions controlling weight. As explained above, two of these reasons challenged by

13

Plaintiff are, in fact, supported by substantial evidence. In order to uphold the ALJ's credibility determination it is not necessary, therefore, that every reason the ALJ set forth in his written opinion be supported by substantial evidence. It is enough that the reviewing Court can follow the ALJ's line of reasoning and can conclude that it is supported by evidence that "a reasonable mind could accept . . . as adequate to support the challenged conclusion." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

In turning to Plaintiff's last objection, it is important to note that, contrary to Plaintiff's interpretation, the impetus of the ALJ's statement is not that the nature of Plaintiff's treatment, whether conservative or aggressive, undercuts Dr. Bonasso's credibility. Rather, it is that Plaintiff's continued engagement in activities of daily living calls into question Dr. Bonasso's conclusions with respect to Plaintiff's limitations. The question that must be answered is whether substantial evidence exists to suggest that Plaintiff continued to engage in activities of daily living that contradict Dr. Bonasso's opinions.

As discussed by the ALJ, CNP Mitchell noted on Plaintiff's pain questionnaire that Plaintiff "could use public transportation, carry out routine ambulatory activities such as shopping and banking, and climb a few steps at a reasonable pace. " (R. at 44, 677.) Dr. Swedberg reported that Plaintiff could use public transportation, prepare meals, and sort, handle, [and] use files. (R. at 694.) The Undersigned finds, therefore, that substantial evidence exists in the record to support the ALJ's conclusion with respect to Plaintiff's treatment history.

Accordingly, Plaintiff's second assignment of error is without merit.

**C. The ALJ's Credibility Determination with Respect to CNP Mitchell is Supported by Substantial Evidence**

In his written opinion, the ALJ accorded CNP Mitchell's opinion "little weight" because, according to the ALJ, she provided "little more than a checkbox form without much in the way

of discussion." (R. at 46; ECF No. 12 at 21.) Plaintiff argues that the ALJ's characterization of CNP Mitchell's documentation of the treating relationship is inaccurate. According to Plaintiff, CNP Mitchell's conclusions are supported by the treatment notes she accumulated over the course of an entire year. (ECF No. 12 at 21; R. at 544-547, 642-653.) Plaintiff appears to be making two arguments with respect to CNP Mitchell: first, that CNP Mitchell's opinion is, in fact supported by her other treatment notes and, second, that CNP Mitchell's opinion must, therefore, be accorded greater weight.

With respect to Plaintiff's first argument, the Undersigned finds that CNP Mitchell's other treatment notes generally support her conclusions. CNP Mitchell noted on August 22, 2012 that "[i]n regards to functionality and activities of daily living [Plaintiff] does all that she is able to do, she often has to take breaks while even doing such simple chores as washing dishes." (R. at 643.) On February 19, 2013 CNP Mitchell reported that "the patient has much muscle pain. . . . [T]he patient reports that light touch will 'send me over the moon.' Today the patient is here, she is explaining how cramped her muscles are and how much spasm she is having, and she questions why this could possibly be happening given that she is already utilizing Zanaflex." (R. at 653.)

Plaintiff's second argument, however, is misplaced. It does not follow automatically from the fact that CNP Mitchell's opinions are supported by her broader treatment notes that the ALJ must accord those opinions significant weight. The weight that the ALJ is required to give to a certain source is set forth in the governing regulations. Plaintiff implicitly acknowledges this fact in her additional argument that the ALJ's characterization of CNP Mitchell as "not a recognized medical source" is erroneous. (ECF No. 12 at 22; R. at 46.) Plaintiff contends that

15

CNP Mitchell is a valid "other source" opinion as set forth in 20 C.F.R. § 404.1513. (ECF No. 12 at 22.) Under the relevant regulation, however, "[a]cceptable medical sources are—

> (1) Licensed physicians (medical or osteopathic doctors);
>
> (2) Licensed or certified psychologists. . . .;
>
> (3) Licensed optometrists . . . ;
>
> (4) Licensed podiatrists . . .; and,
>
> (5) Qualified speech-language pathologists, for purposes of establishing speech or language impairments only.

20 C.F.R. § 404.1513(a). The same regulations include nurse practitioners, such as CNP Mitchell, in the group of "other sources." 20 C.F.R. § 404.1513(d). The ALJ must evaluate and weigh the opinions of other source opinions, but the ALJ is not required to show the opinion the same deference as acceptable medial source opinions. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013). The ALJ, therefore, was correct to evaluate CNP Mitchell's opinion as an "other source" opinion, rather than as an "acceptable source" opinion. It is clear from the ALJ's written opinion that he considered Plaintiff's "broader treatment record" in making his credibility determination with respect to CNP Mitchell's "other source" opinion. (R. at 46.) Accordingly, the Undersigned finds that Plaintiff's third assignment of error is without merit.

**D. The ALJ Credibility Determination with Respect to Dr. Swedberg is Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in finding Dr. Swedberg's opinion "partially credible" because the ALJ's finding "lacks specificity" and "is ultimately not based on substantial evidence." (ECF No. 12 at 22.) The Undersigned notes, as an initial matter, that the ALJ was quite specific in listing the reasons why he found Dr. Swedberg only partially credible. First, the ALJ recognized that Dr. Swedberg's opinion is entitled to at least some credence "because he

completed an 'in person' evaluation of the claimant and identified some of her ongoing impairments." (R. at 46.) The ALJ determined, however, that "his conclusions did not appear to logically flow from his examination," detracting from his credibility. (*Id*.) The ALJ observed that Dr. Swedberg's notes "only indicated that the claimant had some reduced range of motion and few other significant physical findings." (*Id*.) The ALJ also stated that Dr. Swedberg's opinion claimed limitations that Plaintiff's treating doctors did not identify. (*Id*.) Additionally, the ALJ concluded that evidence existed to support some of Dr. Swedberg's assessment of Plaintiff's "ability to lift and carry," but not to support "the remainder of his conclusions." (*Id*.) The ALJ provided more than enough detail to enable a meaningful review of his findings in this matter. Furthermore, substantial evidence in the record supports his credibility determination.

As the ALJ observed, Dr. Swedberg's examination "only indicated that the claimant had some reduced range of motion and few other significant physical findings." (R. at 46, 686-686.) Dr. Swedberg reported reduced range of motion in Plaintiff's cervical spine, shoulder, and dorsolumbar spine, but noted normal range of motion in Plaintiff's elbow, wrist, hands, fingers, hips, knees, and ankles. (R. at 686-688.) Dr. Swedberg reported normal manual muscle testing findings. (R. at 685.) (R. at 691.) Yet, as the ALJ also noted, "[d]espite his findings, [Dr. Swedberg] opined that the claimant had a whole range of quite severe postural and environmental limitations, among other limitations." (R. at 46, 692-693.) In particular, Dr. Swedberg indicated that Plaintiff could never climb stairs and ramps, balance, kneel, crouch, crawl, and only occasionally stoop. (R. at 692.) Additionally, Dr. Swedberg opined that Plaintiff could never tolerate humidity, wetness, dust, extreme heat, or move mechanical parts." (R. at 693.) In support of his credibility determination, the ALJ stated that Plaintiff's "treating doctors did not suggest that she had these types of limitations, there was little evidence from her

17

treatment notes that she had such extreme limitation, and there was little other objective evidence that would support his conclusions within that domain." (R. at 46.) The Undersigned finds, therefore, that substantial evidence in the record supports the ALJ's credibility finding with respect to Dr. Swedberg. Accordingly, Plaintiff's fourth assignment of error is without merit.

**E. The Jobs Identified by the VE are Consistent with the ALJ's Assessed RFC**

In her final assignment of error, Plaintiff argues that "[a]ll 3 jobs identified by the Vocational Expert and relied on by the ALJ at Step 5 are inconsistent with the ALJ's assessed RFC because they all require 'frequent' reaching." (ECF No. 12 at 24.) Plaintiff also argues that the job of "telephone clerk," which requires frequent communication, is inconsistent with the ALJ's assessed RFC's limitation to only occasional interaction with others. (*Id*.) Defendant appears to concede Plaintiff's point with respect to the "telephone clerk" job. (ECF No. 19 at 17.) With respect to the jobs that require "frequent reaching," however, Plaintiff's argument is misplaced. The ALJ's RFC determination included a limitation of "occasional bilateral overhead reaching," but not regular reaching. (R. 40.) Plaintiff does not argue that any of the jobs identified by the VE require more than "occasional bilateral overhead reaching." (*Id*.) The Undersigned finds, therefore, that the jobs identified by the VE are consistent with the ALJ's assessed RFC. Accordingly, Plaintiff's fifth assignment of error is without merit.

## VII. CONCLUSION

In conclusion, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Undersigned **RECOMMENDS** that the Commissioner of Social Security's decision be **AFFIRMED** and Plaintiff's Statement of Errors be **OVERRULED**.

18

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  February 8, 2016                       ____*/s/ Elizabeth A. Preston Deavers*____
                                                              ELIZABETH A. PRESTON DEAVERS
                                                              UNITED STATES MAGISTRATE JUDGE